

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Wm. F. Jackson
County Attorney
Waller County
Hempstead, Texas

Dear Sir:                    Opinion No. O-6961

Re: Whether the legal notices
of a county may be published
in a newspaper owned by the
county judge, but which has
been leased by him to another
person?

Your request for our opinion on the above question
reads as follows:

"Request is made by A. B. Anderson, County
Judge of Waller County, Texas, for your opinion
on the following question:

"Prior to his induction into office, A. B.
Anderson was the sole owner of 'The Brookshire
Times,' a newspaper published in Waller County,
Texas. He was inducted January 1, 1945, and,
on the 28th day of December, 1944, he executed
a lease agreement between himself and Mary Ann
Ernstes, an exact copy of which follows:

"THE STATE OF TEXAS|
COUNTY OF     WALLER|

"'This contract, made and entered into this 28th
day of December, 1944, between A. B. Anderson of
Brookshire, Waller County, Texas, of the first
part, and Mary Ann Ernests of Harris County,
Texas, of the second part.

"'First, the party of the first part leases to
the party of the second part, for a period of
two years, commencing the 1st day of January,
1945, and ending December 31, 1946, the following

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Wm. F. Jackson, page 2

described property: The Brookshire Times, a news-
paper published at Brookshire, Waller County, Texas,
and the presses, type, imposing stone, gallies,
furniture, files, subscription list and good will at
a rental of Two Hundred Forty Dollars ($240.00) to be
paid in twenty-four installments of ten dollars ($10.00)
each month, and the party of the second part is to have
full use and exercise control of the said Brookshire
Times and receive and keep for her own use all emolu-
ments, revenue and monies of whatever kind during the
term of its contract. The party of the first part
further agrees to give the party of the second part
an option to purchase the above described property
six months after this contract is in effect.

"'Second. The party of the second part, for the above
considerations, agrees to pay to the party of the first
part the rental of Two Hundred Forty Dollars ($240.00)
for the two years, at ten dollars ($10.00) a month
during the term of this contract.

"'The party of the first part agrees to assist the
party of the second part, with any mechanical trouble
that may develop in the above mentioned newspaper,
during the shortage of such labor, without any ex-
pense to the party of the second part.

"'A. B. Anderson
"'Mary Ann Arnstes.'"

"Thereafter, legal notices, such as notices for
bids, (for materials to be purchased by the county),
were published by 'The Brookshire Times,' and a bill
for such services was submitted to the county auditor
for his approval. Such bills for services and materials
furnished the county on the part of 'The Brookshire
Times' were disapproved by the county auditor.

"Under your Opinion 6326, given in response to a
request for an opinion by the Honorable W. F. Herms,
Jr., County Auditor, you call attention to Article
2340, Vernon's Annotated Statutes, which provides
that:

"'. . .the county judge and each commissioner
shall take a written oath that he will not be

Hon. Wm. F. Jackson, page 3

directly nor indirectly interested in any contract with, or claim against, the county in which he resides, except such warrants as may be issued to him as fees of office.'

"Article 373, Penal Code, is also cited in your opinion which, apparently, was referred to the county judge.

"The Honorable A. B. Anderson has submitted this opinion with his request for a brief and opinion for the reason, he says, the request for an opinion by the county auditor did not state all of the facts relative to his ownership of 'The Brookshire Times,' and that your Opinion No. O-6326, would be based on the assumption that he, the Honorable A. B. Anderson, is now the publisher of 'The Brookshire Times.'

"We presume the county judge was fully aware of the laws which prohibited him from becoming directly or indirectly interested in any contract or claim against the county before he took his oath of office. Apparently, the lease above referred to divested him of any interest in 'The Brookshire Times,' other than a fixed monthly rent for the property which, admittedly, belongs to him, that is, the physical assets of 'The Brookshire Times.' The official masthead of 'The Brookshire Times' is published as follows:

"'THE BROOKSHIRE TIMES
"'Mary Ann Brnates          Publisher.'

"Bills submitted to the county auditor for approval were filed by Miss Brnates, Publisher of The Brookshire Times, and not by A. B. Anderson as the owner or publisher of the paper. To refuse payment of the accounts, in my opinion, would necessitate the auditor's assuming that the county judge had an interest in the business beyond the ten ($10) dollars per month rental paid by the publisher for the use of the physical assets and equipment belonging to him. Article 2340 cannot be construed as an inhibition against the ownership of a newspaper by a public official, or as a mandate which would require a county official to sell his properties merely because he was elected to serve the public.

Hon. Wm. F. Jackson,  page 4

"If this were the correct construction of the
law, then the lessee of any properties belonging to
a public official would be prohibited from entering
into a contract with the county, whether it be a
printing establishment, garage or any other type of
business which might legitimately deal with the
county.

"This interpretation is fundamentally contrary to
all our laws, and it is, therefore, apparent that the
only question involved is whether or not the ten ($10)
dollars per month received by Judge Anderson for the
rent of 'The Brookshire Times' is an emolument or
advantage received in consideration for any bid,
proposal, contract, purchase or sale accruing from
the operation of 'The Brookshire Times' by his
lessee.

"It is my opinion that, in the absence of proof
to the contrary, it will not be assumed that the
Honorable A. B. Anderson receives benefits either
directly or indirectly from any contract between
Waller County and 'The Brookshire Times,' or any
emolument or advantage from any bid, proposal,
contract, sale of material, services or supplies
by 'The Brookshire Times' to Waller County.

"I have been unable to find any cases in support
of the view taken by the county auditor and deem it
unnecessary to quote authorities in support of the
fundamental proposition that there could be no
abridgement of the right of ownership and the
attending right to lease or rent properties belong-
ing to a citizen merely because he had been elected
to serve as a public official. Indeed, it would
seem that if we must indulge in any assumptions,
the confidence bestowed upon him by the people
would justify assuming that no benefits accrue to
him other than those which are incidental to the
ownership of his properties."

Article 2340, Vernon's Annotated Civil Statutes, provides
that a county judge shall take the official oath and "shall
also take a written oath that he will not be directly or
indirectly interested in any contract with, or claim against,
the county in which he resides, except such warrants as may
issue to him as fees of office."

The common law has always recognized the danger to public welfare arising when a public official, acting in his official capacity, makes a contract in which he is interested individually. 6 Williston on Contracts, Sec. 1735. The Texas courts applied this rule at an early date and declared such contracts to be void. As stated by Judge Lipscomb in the case of Flanikin vs. Fokes (1855), 15 Tex. 180 p. 182:

"A contract which would give him (the public official) an interest in an official act to be done by him would be repugnant to law and sound morality. * * *"

This common law rule, as it affects certain officers and certain types of contracts, has been enacted into a penal statute, Art. 373 of the Penal Code of Texas, which reads as follows:

"If any officer of any county, or of any city or town shall become in any manner pecuniarily interested in any contracts made by such county, city or town, through its agents, or otherwise, for the construction or repair of any bridge, road, street, alley or house, or any other work undertaken by such county, city or town, or shall become interested in any bid or proposal for such work or in the purchase or sale of anything made for or on account of such county, city or town, or who shall contract for or receive any money or property, or the representative of either, or any emolument or advantage whatsoever in consideration of such bid, proposal, contract, purchase or sale, he shall be fined not less than fifty nor more than five hundred dollars."

This statute was followed in the case of Meyers et al vs. Walker et al, 276 S. W. 305, which had to do with a contract entered into by the mayor and commissioners of a city for street improvement and wherein it had been agreed before the contract was awarded that the bidders receiving the award would bear and pay the expenses of inspection trips to Fort Worth, Dallas and other cities. In holding said contract illegal and against public policy, the court laid down the following rules of law:

Hon. Wm. F. Jackson, page 6

"Under the admissions of the mayor and commissioners, would the contract be illegal and against public policy? We think so. 'Contracts in their nature calculated to influence the action of public officers and the effect of which is to influence them one way or the other are against public policy.' If a public official directly or indirectly has a pecuniary interest in a contract, no matter how honest he may be, and although he may not be influenced by the interest, such a contract so made is violative of the spirit and letter of our law, and is against public policy.

\*\* \* \*

"Mr. Story on Contracts, Sec. 546, says the expression 'public policy' has never been defined by the courts but has been left loose and free of definition in the same manner as fraud. This rule may, however, be safely laid down, that whenever any contract conflicts with the morals of the time and contravenes any established interest of society, it is void as being against public policy."

A similar holding was made by the Supreme Court in the case of of Edinburg et al vs. Ellis, 59 S. W. (2d) 99, wherein the following holding was made:

"It is the general rule that municipal contracts in which officers or employees of the city have a personal pecuniary interest are void. 44 C. J. pp. 89 and 90; 6 R. C. L. pp. 739 and 740; Meyers v. Walker (Tex. Civ. App.) 276 S. W. 305. This rule is held to apply to members of the city council. It has long been the public policy of this state to prohibit officers of a city from having a personal pecuniary interest in contracts with the city and this policy is specifically expressed in both the penal and civil statutes. See article 373, Penal Code, and article 938, R. C. S. 1925. Article 373 provides that if an officer of a city or town shall become in any manner pecuniarily interested in any contracts made by such city or town, or shall become interested in the purchase or sale of anything made for or on account of such city or town, he shall be subject to a fine. Article 938 also provides that

Hon. Wm. F. Jackson, page 7

no member of the city council or any other officer of a corporation shall be directly or indirectly interested in any contract, the consideration of which is paid from the city treasury.

"The foregoing rule rests upon sound public policy. Its object is to insure to the city strict fidelity upon the part of those who represent it and manage its affairs. The rule prohibiting public officers from being interested in public contracts should be scrupulously enforced."

There is no question but that the statutes referred to, as well as the opinions of the court construing them above referred to, are based upon sound public policy. The object is to insure to the county strict fidelity upon the part of those who manage its fiscal affairs, and the rule prohibiting public officials from being interested in public contracts should be scrupulously enforced. It is our opinion, however, that the situation outlined in your letter does not come within the purview of said Art. 373, nor within the rules of law laid down in the opinions referred to. The authorities are practically unanimous to the effect that the officers, to be liable, must have an interest, directly or indirectly, in the subject matter of the contract. A remote contingency will not bring said officers within the statutes, or the rules laid down in said opinions. The Texas rule is well stated in 34 Tex. Jur. Sec. 72, pp. 449-450, which reads as follows:

"An officer is prohibited from acting in his official capacity as to matters in which he has an interest. Conspicuous examples of such prohibitions are those which forbid judges from sitting in any case, and members of the commissioners' court from participating in the consideration of any claim in which they are interested. But to come within the rule the officer's interest must be direct and certain; he is not disqualified by an alleged monetary interest which is at most contingent, and may not in fact exist at all."

44 C. J. Sec. 2175, p. 93, states said rule as follows:

"A pecuniary interest in the contract direct or indirect is held to come within the prohibition . . . An interest to invalidate the contract must be of a personal or private nature. . . It must be an interest in the subject matter of the contract itself as distinguished from outside interests of the . . . officer incidentally affected by the making of the contract."

From the authorities above referred to, we are of the opinion that there will be no violation of any law in paying for the legal notices referred to, unless collusion or fraud be shown as to the county judge, since the facts stated do not show that the county judge has any interest in the sums paid therefor.

We must not be understood, however, as overruling, or in any way qualifying, our Opinion No. O-6326, as we still adhere to such holding, this opinion being based upon the facts set forth in your request which are different from those made the basis of said Opinion No. O-6326.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Jas. W. Bassett*
Jas. W. Bassett
Assistant

JWB:LJ